IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| COPELAND CORP., | : |
|     Plaintiff, | : |
| vs. | :    Case No. 3:04cv398 |
| | :    JUDGE WALTER HERBERT RICE |
| CHOICE FABRICATORS, INC., | : |
|     Defendant. | : |

DECISION AND ENTRY OVERRULING, AS MOOT, PLAINTIFF'S MOTION FOR ORDER OF POSSESSION (DOC. #4); DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER (DOC. #8)

In its Amended Complaint (Doc. #5), the Plaintiff alleges that it entered into a long-term contract with the Defendant, under which the latter agreed to supply stamped, metal parts to the former.  According to Plaintiff, Defendant has breached the long-term contract between the parties, by unilaterally demanding that the price of those parts be raised.  In its Amended Complaint (Doc. #5), the Plaintiff sets forth three claims for relief, to wit: breach of contract, duress/business compulsion and intentional interference with contractual relationship.  This action is now before the Court on the Defendant's Motion to Dismiss or, in the alternative, to Transfer (Doc. #8).  With that motion, the Defendant argues, in the alternative, that the Court should dismiss this litigation for

want of personal jurisdiction, or that it should transfer it to the Northern District of Alabama, in accordance with 28 U.S.C. § 1404(a), if the Court concludes that it can exercise personal jurisdiction.[1]  As a means of analysis, the Court will initially decide whether this litigation must be dismissed for want of personal jurisdiction.  If the Court concludes that it need not be dismissed, it will turn to the Defendant's alternative request.  The Court begins its analysis by reviewing the standards it must apply whenever it rules upon a defendant's request to dismiss an action for want of personal jurisdiction.

In Dean v. Motel 6 Operating L.P., 134 1269 (6th Cir. 1998), the Sixth Circuit restated the procedural framework which is employed when ruling upon such a request:

> The procedure for determining jurisdiction, and the standard of review on appeal, are clearly defined in this circuit:
>> The case law establishes a settled procedural scheme to guide trial courts in the exercise of this discretion.  If it decides that the motion can be ruled on before trial, the court may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion [leading either to the preparation and submission of affidavits or serving as a predicate for an evidentiary hearing]; or it may conduct an evidentiary hearing on the merits of the motion.
>
> Serras v. First Tennessee Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (quotation marks omitted).

---

[1] Plaintiff owned the tools and dies which it delivered to Defendant to use to stamp the metal parts.  Plaintiff has filed a motion, requesting an order giving it immediate possession of those tools and dies. See Doc. #4.  In its in initial Complaint (Doc. #1), the Plaintiff set forth, as its Fourth, Fifth and Sixth Claims for Relief, claims with which it sought possession of those implements.  The Plaintiff, however, has voluntarily dismissed those claims. See Doc. #6.  Indeed, the Plaintiff did not include them in its Amended Complaint.  Accordingly, the Court concludes that the dispute concerning possession of the tools and dies has been resolved and overrules, as moot, Plaintiff's Motion for Order of Possession (Doc. #4).

Ordinarily, the plaintiff must prove jurisdiction by a preponderance of the evidence. Ibid. That standard does not apply in this case, however, because (although there was discovery) there was no evidentiary hearing on the jurisdiction question. The lack of such a hearing mandates a specific standard for weighing the evidence:

> When … a district court rules on a jurisdictional motion to dismiss … without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff…. To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction.
>
> Furthermore, a court … does not weigh the controverting assertions of the party seeking dismissal….

Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996) (emphasis, citations, and quotation marks omitted); see Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 792-93 (6th Cir. 1996) (favoring interpretation expressed at Conti v. Pneumatic Prods. Corp., 977 F.2d 978, 987 (6th Cir. 1992) (Boggs, J., dissenting)); Serras, 875 F.2d at 1214.

We have explained elsewhere why this relatively light standard for a plaintiff in this situation is appropriate: "Any other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff." Serras, 875 F.2d at 1214. Although at first glance this appears to be a lopsided standard, the defendant has adequate recourse against a plaintiff who "merely [files] a written affidavit [asserting] jurisdictional facts":

> First, a defendant who alleges facts that would defeat the court's personal jurisdiction can invoke the court's discretion to order a pretrial evidentiary hearing on those facts. If the written submissions raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing, and to order discovery of a scope broad enough to prepare the parties for that hearing. At this stage, the burden on the party asserting jurisdiction quite properly increases. She must now establish that jurisdiction exists by the same standard that would obtain if the matter were deferred to trial: the preponderance of the evidence.

Ibid. (citations omitted). Furthermore, [the defendant] can raise jurisdictional arguments during the trial as well. It is not as if this early determination, with the burden on the plaintiff so low, is the last word on jurisdiction. See Conti, 977 F.2d at 991 (Boggs, J., dissenting).

As a final consideration, we would not use this standard if the reason for not having an evidentiary hearing was that there was no "real dispute" as to the facts or to the extent of discovery. International Technologies Consultants, Inc. v. Euroglas S.A., 107 F.3d 386, 391 (6th Cir. 1997); Conti, 977 F.2d at 980. If there was no such dispute, it would be a waste of

- 3 -

resources to conduct an evidentiary hearing, but we would not prejudice defendants because of this desire for efficiency. In such cases, plaintiffs face the same burden [at trial] as they would if there had been an evidentiary hearing: proof of jurisdiction by a preponderance of the evidence.

Id. at 1271-72. See also, Bridgeport Music, Inc. v. Still N The Water Publishing, 327 F.3d 472, 478 (6th Cir.) ("Dismissal [when an evidentiary hearing has not been held] is proper only if all the specific facts which the plaintiff … alleges collectively fail to state a prima facie case for jurisdiction") (internal quotation marks and citations omitted), cert. denied, 540 U.S. 948 (2003).

To determine whether personal jurisdiction exists over a nonresident defendant, a District Court must apply the law of the state in which it sits, subject to the constitutional limits of due process. Cole v. Mileti, 133 F.3d 433 (6th Cir. 1998); CompuServe v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). Herein, the Defendant does not argue that the Court is not permitted to exercise personal jurisdiction under Ohio's long arm statute, Ohio Revised Code § 2307.382.[2] Therefore, the Court need only consider whether exercising personal jurisdiction herein would offend due process. In Cole, the Sixth Circuit restated that test, which must be applied in order to determine whether the exercise of specific personal jurisdiction over a particular defendant comports with due process:

> First, the defendant must purposefully avail himself of the privilege of conducting activities within the forum state; second, the cause of action must arise from the defendant's activities there; and third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair. Nationwide Mut. Ins. Co. v. Tryg

---

[2]See Defendant's Motion to Dismiss or, in the alternative, to Transfer (Doc. #8) at 4 (identifying the issue pertaining to personal jurisdiction as "whether exercise of personal jurisdiction over [Defendant] is consistent with Due Process").

- 4 -

>Int'l Ins. Co., 91 F.3d 790, 794 (6th Cir. 1996); Southern Machine Co. v. Mohasco Industries Inc., 401 F.2d 374, 381 (6th Cir. 1968).

133 F.3d at 435.  Accord, Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000).

In November, 2001, the Defendant and the Plaintiff entered into a long-term contract, running from December, 2001, to December, 2004, under which the Defendant agreed to manufacture stamped, metal parts which it would supply to the Plaintiff.  According to the affidavit of Darlene Lawrence ("Lawrence"), the employee of Defendant who managed its account with Plaintiff, Defendant manufactured the parts that were the subject of the parties' contract at its manufacturing facility located in Attallia, Alabama.  Plaintiff delivered the tools and dies necessary to manufacture those parts to Defendant's plant in Attallia, using its (Plaintiff's) trucks.  During the last year of the contract, about 60% of those parts were delivered to Plaintiff's manufacturing facility in Alabama, while another 25% of them were delivered to its facility in Ohio.[3]  Plaintiff picked up the parts that were destined for its plants in Alabama and Ohio at Defendant's Attallia facility, and arranged for the shipping of the parts which were to be delivered to other states.  The Defendant does not have any employee or sales representative in Ohio, has no real estate, owned or rented, in this state.  In addition, Defendant does not pay taxes or advertise in Ohio.  Defendant's contract with Plaintiff is its only one with an Ohio corporation.

In response, the Plaintiff has supplied the affidavit of James Len Hubbard ("Hubbard"), its director of purchasing, who indicates that Plaintiff and Defendant

---

[3] The remaining approximately 15% were delivered to other facilities of the Plaintiff.

- 5 -

had a contractual relationship from 1980, through late 2004, whereby the latter manufactured stamped parts for the former.  Throughout the relationship between the parties, that lasted nearly 25 years, a significant portion of the parts manufactured by Defendant have been used by Plaintiff in its four plants located in Sidney, Ohio.  Throughout, the Defendant has been fully aware of that fact.  All payments to Defendant have been made from Plaintiff's headquarters in Sidney, Ohio, drawn on a bank located in this state.  In May, 2001, Plaintiff sent a notice and Request for Quotation to Defendant and other potential suppliers, indicating that it anticipated receiving bids to supply the parts in question for the period from late that year until late 2004.  The Request for Quotation indicated that a significant portion of the parts to be manufactured by the successful bidder would be used in Plaintiff's plants located in Ohio.  Defendant responded to the notice by sending an email to Plaintiff at its headquarters in Sidney, expressing an interest in supplying the parts.  In July, 2001, Plaintiff conducted an auction on the contract, and Defendant was the low bidder.  Thereafter, the parties negotiated the terms of the long-term contract.  During that negotiation process, Defendant sent numerous faxes and made numerous telephone calls to Plaintiff at its headquarters in Sidney. During the life of the long-term contract that is the subject of this litigation, Plaintiff paid Defendant nearly $11 million for the parts manufactured by the latter. More than $3.3 million of that amount was for parts used by Plaintiff, with Defendant's knowledge, in the Plaintiff's plants located in Ohio.  Throughout the life of the contract, the pick-up and delivery of parts was coordinated through Plaintiff's logistics department at its headquarters in Sidney.  Whenever problems concerning pick-up or delivery would arise, Defendant would contact Plaintiff at its

headquarters in Sidney.  During the life of the contract, Defendant made, on average, one telephone call a week to Plaintiff's procurement department in Sidney.  In addition, Defendant occasionally sent a representative to meet with Plaintiff's representative in that city.  Defendant's demands to increase the price it was paid under the long-term contract were directed to Plaintiff's headquarters in Sidney.

Simply stated, the evidence supplied by the Plaintiff unquestionably demonstrates that, at a minimum, it has met its burden of establishing a prima facie case of jurisdiction.[4]

<u>First</u>, Hubbard's affidavit unquestionably shows that the Defendant has purposefully availed itself of the privilege of doing business in Ohio.  It engaged in a contractual relationship with an Ohio corporation, under which it manufactured parts for that corporation, that lasted nearly 25 years.  During the last long-term contract between the parties, Defendant was paid more than $3.3 million, in excess 30% of the total value of that contract, for parts used by Plaintiff in its Ohio plants.  The Defendant frequently contacted Plaintiff in Ohio while that contract was being negotiated, as well as during its execution.  The Sixth Circuit has said that the purposeful availment requirement "ensures that a defendant will

---

[4]Plaintiff has attached, as Exhibit B to its initial Complaint (Doc. #1), a document, which is also referenced in its Amended Complaint and Hubbard's affidavit. Plaintiff describes Exhibit B as purchase order form that it sent to Defendant whenever it ordered additional parts under the long-term contract.  Exhibit B provides that the parties agree to jurisdiction in the United States District Court for the Southern District of Ohio.  Lawrence, Defendant's employee who oversaw the contract, states in her affidavit that she has never seen Exhibit B.  Because the Court concludes that it can exercise personal jurisdiction without reference to Exhibit B, it is unnecessary to decide whether it constitutes a contractual waiver of personal jurisdiction.

not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts." Kerry Steel, Inc. v. Paragon Industries, Inc., 106 F.3d 147, 150 (6th Cir. 1997) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). Simply stated, there is nothing random, fortuitous or attenuated about Defendant's contacts with Ohio.[5]

Second, Plaintiff's claims, breach of contract, duress/business compulsion and intentional interference with a contractual relationship, all arise out of the last long-term contract between the parties and, thus, out of the Defendant's contacts with Ohio.

Third, it would not be fundamentally unfair to subject a party, which has had a contractual relationship with an Ohio corporation lasting nearly 25 years, to a lawsuit in this state which arises out of that relationship.

Accordingly, the Court overrules the branch of Defendant's Motion to Dismiss or, in the alternative, to Transfer (Doc. #8), with which it challenges personal jurisdiction.

---

[5]Defendant relies heavily upon Kerry Steel, in arguing that this Court cannot exercise personal jurisdiction. That decision was an appeal from the decision by the District Court to dismiss the matter for lack of personal jurisdiction. That lawsuit arose out of unsolicited telephone calls from the plaintiff, a Michigan corporation to the defendant, an Oklahoma corporation, whereby the plaintiff offered to sell the defendant a large quantity of steel coils. The defendant agreed, and plaintiff brought suit after the former had failed to pay for the steel. In affirming the dismissal, the Sixth Circuit concluded that the defendant had not purposefully availed itself of the privilege of doing business in Michigan, given the one-time transaction between the parties. Kerry Steel is readily distinguishable, since the parties herein most decidedly did not enter into a one-time transaction. On the contrary, their transactions spanned nearly 25 years. See also, Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883 (6th Cir. 2002) (distinguishing Kerry Steel because parties had an ongoing business relationship, rather than entering into a one-time transaction).

Alternatively, the Defendant argues that the Court should transfer this litigation to the Northern District of Alabama in accordance with 28 U.S.C. § 1404(a), which provides:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

When reviewing a motion to transfer under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" Moses v. Business Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988)).  It is axiomatic that a motion under § 1404(a) cannot be used to transfer the inconvenience of litigating in a distant court from the defendant to the plaintiff. See Van Dusen v. Barrack, 376 U.S. 612, 645-646 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not a forum likely to prove equally convenient or inconvenient."); Imperial Products v. Endura Products, Inc., 109 F. Supp.2d 809, 818 (S.D.Ohio 2000) (noting that the "'venue transfer provisions of Section 1404(a) [are] not meant to merely shift the inconvenience to the plaintiff'") (quoting Bacik v. Peek, 888 F. Supp. 1405, 1415 (N.D.Ohio 1993)). The party seeking a transfer has the burden of demonstrating that such in warranted. Terra International, Inc. v. Mississippi Chemical Corp., 119 F.3d 688 (8th Cir. 1997); Credit Chrysler Corp. V. Country Chrysler, Inc., 928 F.3d 1509 (10th Cir. 1991); Centerville Alf, Inc. v. Balanced Care Corp., 197 F. Supp.2d 1039 (S.D.Ohio 2002).

Herein, the Defendant does not address any of the factors that should be considered when ruling on a request to transfer under § 1404(a), such as convenience of the parties and the witnesses, as well as the public interest. Rather, it merely indicates that more of the activity spawned by the parties' contractual relationship occurred in Alabama.  See Doc. #8 at 9.  As a consequence, the Court concludes that the Defendant has failed to meet its burden of demonstrating that a transfer is warranted.

Based upon the foregoing, the Court overrules the Defendant's Motion to Dismiss or, in the alternative, to Transfer (Doc. #8), in its entirety.

September 19, 2005

        /s/ Walter Herbert Rice
    WALTER HERBERT RICE, JUDGE
    UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.