UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **COPELAND CORPORATION** | ) | CASE NO.: 3:04-CV-398 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **MAGISTRATE JUDGE** |
| *vs.* | ) | **OVINGTON** |
| | ) | |
| **CHOICE FABRICATORS, INC.** | ) | |
| | ) | **MEMORANDUM IN SUPPORT** |
| | ) | **OF PLAINTIFF COPELAND** |
| *Defendant.* | ) | **CORPORATION'S MOTION** |
| | ) | ***IN LIMINE* TO EXCLUDE** |
| | ) | **EVIDENCE OF ITS CONTRACTS** |
| | ) | **WITH  OTHER SUPPLIERS** |

## I.     INTRODUCTION

Copeland expects that Choice will attempt to introduce evidence regarding Copeland's contracts and business dealings with its suppliers other than Choice.  Choice was Copeland's only source for the parts covered by the supply contract at issue in this case.  Copeland had different supply contracts with a number of companies to supply other parts Copeland used to manufacture compressors.  The terms of each contract are different.  Some contracts, unlike the Choice agreements, contain clauses adjusting prices if raw material prices change, others do not have such provisions.  The contracts also differ on whether the parties must renegotiate prices under certain circumstances.  The dates and length of the contracts vary.  Most of the contracts were entered into after the Choice agreement.  In short, each contract and its circumstances is unique.

Choice may attempt to introduce evidence that, if because Copeland accepted surcharges from some suppliers, Copeland was required to accept different surcharges

1

from Choice, despite the fact that the Copeland's Contract with Choice clearly prohibited such price increases. According to Federal Rules of Evidence 401, 402 and 403, and well-settled law, evidence of Copeland's contracts and business dealings with other companies is irrelevant and inadmissible. Copeland's relationships and agreements with other suppliers have no bearing on Copeland's right to enforce its fixed-price Contract with Choice. Further, any arguable probative value is substantially outweighed by the risk of unfair prejudice to Copeland.

## II. FACTUAL BACKGROUND

During discovery, Choice requested that Copeland produce contracts and related documents between Copeland and other suppliers. (*See*, *e.g.,* Choice's Fifth Set of Requests for Prod. of Document, Document Req. No. 1; Choice's Sixth Set of Requests for Prod. of Documents, Document Req. No. 1; Choice's Discovery Requests dated July 20, 2006, Interrogatory Nos. 1-5, Document Req. No. 1)(Attached as Exhibits A-C). Although Copeland maintained that the documents were not reasonably calculated to lead to the discovery of admissible evidence, in a spirit of cooperation, and without waiving its objections to the production Copeland produced the requested documents pursuant to a protective order. (*See* Copeland's Amended Response to Choice's Fifth Set of Requests for Prod. of Documents; Copeland's Amended Response to Choice's Sixth Set of Requests for Prod. of Documents)(Attached as Exhibits D and E).

During the depositions of Copeland representatives, Choice requested even more detailed information about Copeland's contracts and dealings with its other suppliers. For example, counsel for Choice questioned Copeland's representatives about Copeland's suppliers of parts "similar to the parts Choice manufactured." *See* Hubbard Depo. 28-29;

41-45; 60-66;[1] *See* Hartley Depo. 15-20;[2] Grimes Depo. 9-10.[3] Counsel inquired about the negotiation of the unrelated contracts. *See* Hubbard Depo. 41-45; Hartley Depo. 15-20; Grimes Depo. 28-33, 44-60. Counsel also asked Copeland about situations involving suppliers whose contracts contained a price escalation clause and who requested price adjustments as a result of increased steel prices. *See* Hubbard Depo. 60-66; *see* Hartley Depo. 35-41, 65-75; *see* Grimes Depo 44-60.

Copeland expects that Choice will claim that Copeland's payment of other surcharges is evidence that Choice was somehow singled out for unfair treatment, or that if Copeland paid surcharges to other suppliers, Copeland must pay Choice's surcharges.[4]

Copeland's contracts and its business dealings with other suppliers are irrelevant. Any arguable probative value is substantially outweighed by the danger of unfair prejudice. As such, any evidence relating to Copeland's dealings under different contracts, with different supplier, should be excluded.

### III. LAW AND ARGUMENT

**A. Evidence Relating to Copeland's Contracts with Other Suppliers is Irrelevant.**

Evidence is not relevant when it does not have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *Bouchard v.*

---

[1] Relevant portions of the deposition transcript of James "Len" Hubbard are attached as Exhibit F.

[2] Relevant portions of the deposition transcript of Chad Hartley are attached as Exhibit G.

[3] Relevant portions of the deposition transcript of Melissa Grimes are attached as Exhibit H.

[4] There is no law supporting this theory, that payment of surcharges to one supplier creates an obligation to pay surcharges received from another supplier, regardless of the terms of the supplier contracts. This suggests the evidence would merely confuse the jury.

3

*American Home Products Corp.* 213 F.Supp.2d 802, 810 (N.D. Oh. 2002).  Relevancy is the relationship between an item of evidence and a fact properly provable in the case. Advisory Committee Note to Fed. R. Evid. 401 (1972).  If evidence is not relevant, it is inadmissible at trial and must be excluded.  Fed. R. Evid. 402.

  The issue in this case is whether Choice could charge Copeland prices in excess of those set in Choice's Contract with Copeland where Choice committed to specific pricing.  Copeland's dealings with suppliers other than Choice, governed by different contracts and different circumstances, have no bearing on any fact in this case.  Because dealings with third parties have no probative value to agreements between contracting parties, courts have consistently held that "evidence of other agreements than the one involved in the particular issue is as a general rule inadmissible . . . and evidence of subsequent contracts with other parties is irrelevant."  *See University City v. Home Fire & Marine Ins. Co.,* 114 F.2d 288, 294 (8th Cir. 1940); 17B C.J.S, Contracts, § 722; *see also*, *Mi-Jack Prods. v. Internat'l Union of Oper. Eng'rs, Local 150*, No. 94-c-6676, 1995 U.S. Dist. Lexis 16930 (N.D. Ill. Nov. 14, 1995) (evidence concerning termination of other contracts is not relevant to cancellation of the contract at issue) (Attached as Exhibit I); *John W. Rooker & Assocs. v. Wilen Mfg. Co*., 211 Ga. App. 519 (1993) (granting the property owner's motion in limine excluding evidence of the property owner's conduct with respect to unrelated contracts); *State v. Vierra*, 125 Idaho 465, 467 (Idaho Ct. App. 1994) (affirming district court's exclusion of evidence of other business dealings as irrelevant).

  Choice itself claimed during discovery that evidence regarding dealings with third

4


Case: 3:04-cv-00398-SLO Doc #: 66-1 Filed: 02/12/07 Page: 5 of 9 PAGEID #: 2101

parties is irrelevant. Unlike Copeland, Choice refused to <u>answer interrogatories</u>[5] regarding <u>its</u> business with other companies:

> 13. <u>Request</u>: With respect to each customer identified in response to Interrogatory No. 10, please state whether Choice sought, demanded, or obtained an increase in price or prices by any means, including a modification of the price terms of the original fixed-price contract, or the execution of a superseding agreement, imposition of a surcharge or in any other manner. . . .
>
> <u>Response</u>: **Choice objects to the first part of this interrogatory on grounds that this request is irrelevant, not likely to lead to discoverable information, and is unduly burdensome. The parts sold to other customers were different from the parts sold to Copeland**.

*See* Choice's Response to Copeland's First Set of Interrogatories (emphasis added) (Attached as Exhibit J).

Moreover, Choice refused to <u>produce contracts</u> regarding its other customers:

> 20. Please produce all fixed-price contracts of twelve months or more in duration to which you were a party during any portion of the calendar years 2001 through 2004, and any exhibits, schedules, addenda, correspondence that discusses or memorializes the terms and conditions or any fixed-price contracts of twelve months or more in duration.
>
> <u>Response</u>: **Choice objects to this request because the information sought is not relevant and not reasonably calculated to lead to the discovery of admissible evidence**.

*See* Choice's Responses to Copeland's First Request for Production of Documents (emphasis added). Choice should be held to the position it took during discovery. It cannot claim its contracts with third parties are irrelevant while offering evidence concerning Copeland's third-party contracts.

Evidence regarding Copeland's other contracts has no tendency to make the

---

[5] Copeland served Choice with interrogatories relating to Choice's other customers because Choice pled its affirmative defense of impracticability, putting its treatment of customers at issue.

5

existence of any fact that is of consequence to this action more or less probable than it would be without the evidence, and it is inadmissible under Federal Rules of Evidence 401 and 402.

**B.    The Unfair Prejudice that Would Result from Evidence Relating to Copeland's Other Contracts Substantially Outweighs Any Arguable Probative Value Such Evidence May Have.**

If relevant, evidence related to Copeland's other contracts should be excluded because it will confuse the issues, mislead the jury, and cause undue prejudice to Copeland. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. A trial court has broad discretion in deciding admissibility issues under Rule 403. *Laney v. Celotex Corp.*, 901 F. 3d 1319, 1320 (6th Cir. 1990), (*citing Hines v. Joy Mfg. Co.,* 850 F.2d 1146, 1154 (6th Cir. 1988)). Unfair prejudice means an undue tendency to suggest a decision on an improper basis. *Doe v. Claiborne County, Tenn.,* 103 F. 3d 495, 515 (6th Cir. 1996). Copeland will be unfairly prejudiced by introduction of its numerous unique contracts, each containing different provisions, with suppliers other than Choice.

The issue in this case is whether Choice breached the fixed-price Contract by charging Copeland prices far in excess of the Contract price. That issue can be properly resolved by examining the negotiations between Copeland and Choice, the language of the Contract at issue, and Choice's performance under that Contract. If Choice is permitted to introduce evidence regarding Copeland's other business – which has no bearing whatsoever on this dispute – there is a significant risk that the jury will be

6

confused or misled, so as to evaluate Copeland's conduct under those unrelated contracts instead of the one at issue.   Such evidence will needlessly lengthen the trial.

Such evidence should be excluded under Rule 403, because "[e]ach contract could trigger a 'mini-trial' drawing the jury's attention more and more away from the central issues in this case." *United States v. Jackson*, No. 94-40001-01,1994 U.S. Dist. Lexis 14112 (D. Kan. July 25, 1994) ("Greatly concerned about this serious potential for the jury being confused and misled from exploring the details of collateral business referral relationships, the court will exercise its discretion at trial and limit such evidence on Rule 403 grounds.") (Attached as Exhibit K).  "Evidence of a particular contract likely will invite a probing cross-examination into the specifics of the business relationship [.]" *Id.*

Similarly, if Choice were permitted to introduce evidence of Copeland's contracts with its other suppliers, the result here would be substantial prejudice to Copeland and a significant waste of time and resources.  Where there is a "significant risk that a jury could misuse the evidence," a court may exclude it under Rule 403.  *Mercurio v. Nissan Motor Corp.*, 81 F. Supp. 2d 859, 861 (N.D. Ohio 2000).

## IV.    CONCLUSION

For the foregoing reasons, Copeland respectfully requests that the Court enter an Order *in limine*, precluding Choice from offering evidence regarding Copeland's contracts or other business dealings with suppliers other than Choice at the trial of this action.

Respectfully submitted,


*/s/ M. Neal Rains*
M. Neal Rains (0013081)
Lindsey A. Carr (0074182)
Jay R. Carson  (0068526)
Frantz Ward LLP
2500 Key Center
127 Public Square
Cleveland, Ohio 44114-1230

*Attorneys for Plaintiff*
*Copeland Corporation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Memorandum in Support of Plaintiff Copeland Corporation's Motion in Limine to Exclude Evidence of its Contracts with Other Suppliers was served on all parties of record via the Court's electronic filing system this 12th day of February 2007.

                                        */s/ M. Neal Rains*
                                        M. Neal Rains